IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
NORFOLK VIRGINIA DIVISION

| | | |
|---|---|---|
| **Marcus E Adams pro 'se** | § | |
| **V** | § | Civil Action No. |
| **The City of Norfolk** | § | |
| **Robert Ford, (ret.)** *official & individually* | § | Jury Demand |
| **Brent Johnson** *official & individually* | § | |
| **Phil Evans** *official & individually* | § | |
| **T.C. Williams** *official & individually* | | |

## COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

*NOW COMES Plaintiff, Marcus E. Adams,* Pro 'se filing this first complaint, bringing this action against the City of Norfolk, The Norfolk Police Department and the Norfolk Prosecutors office. Said Defendants took advantage of and used the Plaintiff to supplement their income by carrying out illegal acts and forcing Plaintiff into corruption. Thus, violating the Plaintiff[s] his rights as guaranteed by the Constitution and laws of the United States of America and/ or the State of Texas.

### JURISDICTION AND VENUE

1.  This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) 28 U.S.C. § 1332. This court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the state claims that will be set forth in this complaint. Venue is proper in the Southern District of Texas, Corpus Christi Division, as this is the district where the claim arose

in accordance to U.S.C. § 1391(b). This Court has original subject-matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO"). 22. This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive between Plaintiff and the Defendant[s] and the Plaintiff lives in another state. This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367. This Court has personal jurisdiction over Defendant[s] because these unlawful acts were purposefully supported by criminal activity.

2.      This Court further has personal jurisdiction under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends of justice requires it.

## PARTIES

3.      Plaintiff Marcus E. Adams (hereinafter "Marcus E. Adams") is a resident of Taft Texas, San Patricio County, Texas.

4.      Defendant[s] City of Norfolk, ("hereinafter "City") is a political subdivision of the State of Virginia.

5.      Defendants[s], Phil Evans, Brent Johnson and Detective[s] (ret) Robert Glenn Ford and Lt. T.C. Williams was at all times material to this suit, Prosecutors and officers employed by the Norfolk Prosecutors office and the Norfolk Police Department. Each of the acts complained of herein arises from the conduct of Defendants while acting under color of state law, and color of

right. These violations were committed during their employment and authority with the City of Norfolk. Defendant[s] may be served with subpoenas at their place of employment, @ 800 E City Hall Ave #600, Norfolk Virginia 23510 and 3661 E Virginia Beach Blvd, Norfolk Virginia 23502.

## FACTS

6. Whenever, in this complaint it is alleged that any Defendants and/or persons employed by Defendant did any act, thing, and/or omission, it is meant that Defendant and/or Defendants officers, agents, servants, employees or representatives did such act, thing and/or omission and that at that time it was done with full authorization and/or ratification of Defendant. On or about November 13th 1984 Officer Glenn Ford used informant Antonio Steven Shaw ("Deceased") to engage in a set-up, to have Plaintiff arrested to become an informant. Being young and having no knowledge about the law, Plaintiff arguably states that he was not engaged in any unlawful activity at all, but Plaintiff agrees to help himself with his charges of attempting to break and enter. Plaintiff states he that he seldom solved any crimes, but was sent to Virginia Power to see ("*Chris Spruill*") and retrieve $1,000.00 dollars for homicides. Det. Ford would give Plaintiff a number ("sometimes") and the description of the crime and Plaintiff would receive the funds.

7. Plaintiff states when the Det. Later got comfortable, he would give Plaintiff the crime line telephone number and the Plaintiff would call and use the number[s] given, and go to the Virginia Power and see ("*Chris Spruill*") and get $1,000.00 dollars every time. Plaintiff did this for years.

8. Plaintiff admits that he did in fact solve some homicides such as the Michelle Moore Bosko homicide, the Anthony Juniper quadruple homicide and the Thomas Porter killing of

3

Officer Stanley Cornell Reaves. Plaintiff also helped to solve the bounty hunter bloods homicides all over the City of Norfolk. The head gang member Marlon Reid was arrested.

9. Mr. Adams will testify again as to all the monies given to Det. Ford, Da. Brent Johnson and Det. T.C. Williams to have offender[s] cases have a favorable outcome. Offender[s] cases range from probation violations, to Capital drug offenses. Some cases the Plaintiff had to testify to help offender[s] receive a favorable outcome.

10. The Plaintiff would try to get out and away from this illegal activity, but the Plaintiff would be threatened and Detective Ford would have uniform officers harass the Plaintiff by sitting in front of his house and constantly searching his vehicle with threats of putting the Plaintiff in jail for suspended license violations.

11. This activity would go on for 20 plus years, and Some people even believed the Plaintiff was a Norfolk Police Officer.

12. Plaintiff would meet the assistant DA. Brent Johnson at various locations including but not limited to Virginia Beach, Chesapeake and Norfolk along with Det. Ford. Sometimes the Plaintiff would pay the Officers at the P.O.C. ("Police Operations Center") in the back parking lot and or the interview rooms inside the detective division. Officer T.C. Williams would summon the Plaintiff while on the streets of Norfolk, with no specific time of place at that time to meet.

13. Mr. Adams would in fact be put in jail on bogus charges to get at people who had no bond and or serious non-violent charges. The Officers loved drug dealers because they were the easiest people to get high amounts of money from. Sometimes when the Plaintiff would give payments to the city officials, they would check the plaintiff for a wire and search him. Mr.

Adams would be told to turn his cell phone off at times and threatened that if he co-operates with the feds, they would not believe the Plaintiff over them, and the Plaintiff would have hell to pay.

14. It started out that when Mr. Adams would pay the officers, they would give him a piece of the proceeds. Mr. Adams found out later on that, they gave him money so that he would be a part of the conspiracy that was going on so that if Mr. Adams were to co-operate with outside authorities he would also go to prison. But later on, years down the line, officers told Mr. Adams to get his proceeds from the people after their fee.

15. Plaintiff constantly tried to convince these officers that, if anyone we helped got in trouble again that we couldn't help a second time, they would probably talk to the D.A. or the Feds for co-operation against us. Mr. Adams warned the officers of getting caught and decided to quit over a telephone call. But later that day, Mr. Adams was pulled over by a patrol car and was handcuffed and held at the front of the police cruiser while the officer whose name was Officer Wash, was told to switch his radio to channel ("H"). Once the officer talked to Det. Ford on that channel, Mr. Adams was transported to the Police operations center on Virginia Beach Blvd.

16. Detective Ford came into the interview room where I was being held and told me that he was going thru… a divorce and needed me to continue a while longer. The detective explained that they don't pay enough money to have this happen and be able to live on the rest of his salary. The detective also explained that his furloughs at Norfolk General, the Ford dealership on military hwy., and the restaurant's weren't paying enough hours.

17. Plaintiff tried numerous times to stop this illegal activity but the officers wouldn't allow him to walk away.

18. While plaintiff was awaiting trial in custody, Assistant District Attorney Brent Johnson contacted the plaintiff's wife by using a number that showed "(private")" instead of the usual "(unavailable")" the shows on the caller I.D., he called from a private number and threatened the plaintiff's wife by telling her to tell the plaintiff to keep his mouth shut or he will prosecute Mr. Adams for other charges. Brent Johnson has taken thousands of dollars from the plaintiff and wanted the plaintiff to keep his mouth shut and don't say anything. In fact, Mr. Johnson needed money for his weekend national guard duty once a month he stated. He also met Mr. Adams at the Federal building during his arrest. He looked at the plaintiff through a glass window as if he had his back and to say nothing.

19. Officer T.C. Williams was paid thousands of dollars during his tenure at the Norfolk Police Dept. Plaintiff states Williams never wanted to meet at one place twice and to be at various locations within ten minutes. Plaintiff told Williams on march the 8th that he was going to lawyer up and Williams was satisfied by saying "remember my face"!

20. Detective Ford, Williams and ADA Johnson told my fiancé that Mr. Adams was a liar and don't believe anything he says or have said. The city officials told plaintiff's soon to be wife, that Mr. Adams is a known liar and will say anything to get out of trouble.

## NATURE OF CASE

21. *This is an action alleging while under Color of Law and Color of Right, the Defendant[s]* committed fraud, civil conspiracy to commit fraud, abuse of process, and racketeering, all arising from a scheme between the Defendant[s] that was designed and implemented to defraud the City of Norfolk and surrounding cities. ("Offices") in Tidewater Virginia.

22.     In addition to the fraud, the scheme has also now included perjured interview by the FBI. investigations before the trail, for purposes of concealing the conspiracy and their wrongful acts.[1]

23.     By means of this lawsuit, the Plaintiff seeks that all Defendant[s] to be jointly and severally found liable to the extent of the damages incurred to the Plaintiff due to Defendant's unlawful activity, "including but not limited" to punitive damages for Defendants' illegal and fraudulent actions. The city officials had drug dealers and other non-violent offenders supplementing their income...

24.     The Defendant[s] took advantage of a child at the time and made him do things he didn't want to do. Retaliation was an immediate factor, and my chances to join the military were on hold as per the city officials.

25.     Mr. Adams had to deal with the abuse, racism and many other things. Norfolk police were out of control and got away with a lot of criminal activity with the help of Internal Affairs.

## FIRST CLAIM FOR RELIEF

26.     **SECTION 1983.** The Civil Rights Act of 1987 (Ku Klux Klan Act), now codified as U.S.C. § 1983 as federal law provides: "every person who, , under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the

---

[1] Detective Ford gave False and mis-leading evidence to the investigators and received an added 60 months to run consecutive to the 84.5-month sentence. The true bill was unanimous. With emphasis added!

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. 1983.

27.   The state action requirement for standing under 42 U.S.C. 1983 has more commonly been referred to as "color of state law," from the statute itself. Mr. Adams is informed and believes, and thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

28.   **42 U.S.C. 1983** requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States. As such, Mr. Adams alleges that Defendants, jointly and/or severally deprived him of his Fourth Amendment rights and those rights, privileges, and immunities secured by the Fourth and/or Fifth Amendments to the Constitution incorporated and applied to the states through the Fourteenth Amendment.

29.   Defendants violated this provision by the following actions, inter alia, and/or omissions:
   a)   by detaining Mr. Adams in violation of his Fourth Amendment expectation of privacy and guarantee to security from unreasonable search and seizure without reasonable suspicion and/or probable cause; and
   b)   by retaliating against Mr. Adams for expressing complaints and protected by the First Amendment to the U.S. Constitution.

30.   The Fourth Amendment guarantees security from unreasonable search and seizure. It includes the expectation of privacy, the right to be free from arrests without probable cause to believe the arrested person committed a crime. Accordingly, Mr. Adams alleges that he was subjected to an unreasonable search and seizure, had his expectation of privacy violated, and was detained without reasonable suspicion and/or probable cause,

31.    **1983 - Search & Seizure.** Furthermore, when a person, such as Plaintiff is seized and is not a "suspect" and has committed no crime, but is forced to undergo police escalation and continued harassment, the importance of the governmental interests alleged to justify the intrusion is necessarily diminished. As such, the actions and/or omissions of said officers cannot be justified under the circumstances of the instant case.

32.    **1983 - Municipal liability.** It is also well-established that municipalities are liable under 42 U.S.C. 1983 for constitutional torts that are in compliance with the municipality's customs, practices, policies or procedures. A municipality is liable for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision-making channels. In this case, the City of Norfolk is liable because it sanctioned the custom, practice and/or policy or procedure of illegal searches, illegal seizures and/or violating their rights to be free of unwanted search and seizure. Defendants' actions were a customary practice and/or policy or procedure that was sanctioned by the City of Norfolk out of which deprived Plaintiff of his civil rights by statute and by both the Virginia and United States Constitutions. Liability for the City of Norfolk is established under S 1983 because the violations, with little or no justification, and/or to overstep the bounds of search and seizures is a persistent, widespread practice of city/county employees -- namely police officers -- that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official municipal policy. The City of Norfolk has actual or constructive knowledge of this practice, custom, and/or policy or procedure and sufficiently numerous prior incidents of Officer Robert Ford and Officer T.C. Williams harassment establishes custom and accession to that custom by the City's policy makers. The City of Norfolk unspoken policy of harassing its citizens is a decision that reflects deliberate

indifference to the risk that a violation of a particular constitutional or statutory rights will follow the decision. In the alternative, the City of Norfolk is liable under 1983 for failure to adopt a policy precluding officers from violating citizens' rights because such failure to adopt such a policy is one of intentional choice.

33. Moreover, the City of Norfolk is liable for inadequate training of police officers under §1983. Liability attaches to the City of Norfolk because the City's failure to train amounts to deliberate indifference to the rights of the persons with whom the police come in contact. In particular, Plaintiff alleges that the training program in relation to the tasks the particular officer must perform is inadequate in the respect that the program fails to teach the parameters of searches and seizures as they pertain to the violation of citizens' constitutional rights. As such, the deficiency in training actually caused Defendant[s] to violate Plaintiff's constitutional rights.

34. **<u>1983 - False Arrest and/or False Imprisonment.</u>** Plaintiff further alleges that Defendants, jointly and/or severally, have violated his Fourth Amendment rights when he was falsely detained. Plaintiff pleads a {1983 claim for false imprisonment under the Fourth amendment. Officer Robert Ford nor did Officer Williams have probable cause to detain Plaintiff because the facts and circumstances within his knowledge was not reasonably sufficient to warrant a prudent officer to believe that he had committed or was committing an offense. On an objective basis, it is obvious that no reasonably competent officer would have concluded that a mere conversation warranted Plaintiff's detainment.

35. At all pertinent times, Defendant City authorized and/or ratified the wrongful and tortious acts and/or omissions described herein.

## SECOND CLAIM FOR RELIEF -- Texas -- False Arrest and False Imprisonment

36. The claims brought by Plaintiff under this section only apply to Robert Ford and T.C. Williams in his individual capacity. Any reference to "Defendant[s]" in this section only applies to Ford and Williams and does not include Defendant[s] City. Furthermore, said claims are brought in the alternative should it be found that Ford and Williams were not working within his capacity as a law enforcement officer.

37. As a pendent state cause of action, at all times material and relevant herein, Ford and Williams, by acts and/or omissions and under color of state law, willfully detained Plaintiff without the consent of him and without authority of law. Plaintiff pleads false imprisonment as Ford had the intent to confine him, and carried out the intent by putting Plaintiff in a position so that he could not move, let alone leave. Said confinement resulted in harmful detention, without consent, and without authority of law.

## Title 18, U.S.C., Section 241 - Conspiracy Against Rights

38. This statute makes it unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same).

## Title 18, U.S.C., Section 242 - Deprivation of Rights Under Color of Law

39. This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S.

40. This law further prohibits a person acting under color of law, statute, ordinance, regulation or custom to willfully subject or cause to be subjected any person to different punishments, pains, or penalties, then those prescribed for punishment of citizens on account of such person being an alien or by reason of his/her color or race.

41. Acts under "color of any law" include acts not only done by federal, state, or local officials within the bounds or limits of their lawful authority, but also acts done without and beyond the bounds of their lawful authority; provided that, in order for unlawful acts of any official to be done under "color of any law," the unlawful acts must be done while such official is purporting or pretending to act in the performance of his/her official duties. This definition includes, in addition to law enforcement officials, individuals such as Mayors, Council persons, Judges, Nursing Home Proprietors, Security Guards, etc., persons who are bound by laws, statutes ordinances, or customs.

42. Punishment varies from a fine or imprisonment of up to one year, or both, and if bodily injury results or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire shall be fined or imprisoned up to ten years or both, and if death results, or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

## Title 42, U.S.C., Section 14141 - Pattern and Practice

43. This civil statute was a provision within the Crime Control Act of 1994 and makes it unlawful for any governmental authority, or agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers

or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

**44.** Whenever the Attorney General has reasonable cause to believe that a violation has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

**45.** Types of misconduct covered include, among other things:

a) Excessive Force

b) Discriminatory Harassment

c) False Arrest

d) Unlawful stops, searches or Arrest

### THIRD CLAIM FOR RELIEF - - Texas - - Intentional Infliction of Emotional Duress

**46.** The claims brought by Plaintiff under this section only apply to Ford, Johnson and Williams in their individual capacity. Any reference to "Defendant[s]" in this section only applies to Ford, Johnson and Williams and does not include Defendants City. Furthermore, said claims are brought in the alternative should it be found that Ford and Williams were not working within his capacity as a law enforcement officer.

**47.** As a pendent state cause of action, at all times material and relevant herein, Ford, Johnson and Williams, by acts and/or omissions and under color of state law, intentionally and/or recklessly inflicted emotional duress upon Mr. Adams, thereby he claims the tort of intentional infliction of emotional distress. Mr. Adams alleges that Ford, Johnson and Williams acted

13

intentionally and/or recklessly when detaining/seizing him and further alleges that such conduct was extreme and outrageous. The actions of Ford, Johnson and Williams caused Mr. Adams to suffer emotional distress; and the emotional distress suffered by him was so severe that it required treatment -- no reasonable person should be expected to endure such.

## FOURTH CLAIM FOR RELIEF: VIOLATION OF THE RICO ACT

### Sec. 1965(b). Venue and process

48. In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

### Sec. 1967. Evidence

49. In any proceeding ancillary to or in any civil action instituted by the United States under this chapter the proceedings may be open or closed to the public at the discretion of the court after consideration of the rights of affected persons.

## DAMAGES

50. As a result of the foregoing unlawful and wrongful acts of Defendants, jointly and severally, Mr. Adams has been caused to suffer general damages which include but are not limited to the following: both physical and emotional injury, including but not limited to - - pain and suffering, emotional and mental distress, and personal humiliation and shock.

51. Said injuries have caused Mr. Adams to incur special damages.

52. Pursuant to the Civil Rights Award Act, 42 U.S.C. 1988, a prevailing party in a S 1983 case is entitled to recover his costs and fees. Hence, Mr. Adams further prays for all costs and fees associated with bringing the present case to trial.

53. In addition, Mr. Adams prays for punitive damages against Ford, Johnson and Williams. Punitive damages are designed to punish and deter persons such as Defendant who has engaged in egregious wrongdoing. Punitive damages may be assessed under 1983 when a Defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally-protected rights of others. While municipal defendants are absolutely immune from 1983 awards of punitive damages, such damages may be awarded against a public employee or official in their capacity. Therefore, Mr. Adams alleges and prays for punitive damages against Ford, Johnson and Williams, as such Defendant actually knew that his conduct was unconstitutional, and/or was callously indifferent to its legality.

**WHEREFORE PREMISES CONSIDERED,** Mr. Adams prays that upon trial of the merits, he recovers compensatory damages against Defendants, jointly and severally; that Mr. Adams also recovers punitive damages against the individual Defendants in an amount to be determined to punish and/or deter and to make an example of those Defendants in order to prevent similar future conduct; and that Mr. Adams recover against each Defendant all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation. Moreover, Mr. Adams prays for all pre-judgement and post judgement interest that can be assessed against the Defendants in the event of recover; and that Mr. Adams recover

against each Defendant any and all other general or specific relief to which he proves himself justly entitled.

Respectfully Submitted,

*M. [signature]*

marcusreeses1@outlook.com

Marcus E Adams Jr. pro' se